IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 3-23-cv-00044 |
| CITY OF EL PASO, TEXAS; UNITED ROAD TOWING, INC. d/b/a UR VEHICLE MANAGEMENT SOLUTIONS; and ROD ROBERTSON ENTERPRISES, INC., | § § § § § § § | |
| *Defendants*. | § § | |

## COMPLAINT

Plaintiff, the United States of America, alleges the following:

1. The United States brings this action to enforce the provisions of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043, against the City of El Paso, Texas (hereinafter "El Paso" or the "City"), United Road Towing, Inc. d/b/a UR Vehicle Management Solutions (hereinafter "URT"), and Rod Robertson Enterprises, Inc. (hereinafter "RRE") (collectively "Defendants"), for illegally auctioning at least 176 motor vehicles owned by SCRA-protected servicemembers.

2. The purpose of the SCRA is to provide servicemembers with protections against certain civil proceedings that could adversely affect their legal rights while they are in military service. One of the SCRA's protections is that a person cannot enforce a storage lien on a servicemember's vehicle during, or within 90 days after, a period of military service without a court order. 50 U.S.C. § 3958. Any court reviewing a request for a court order made under

50 U.S.C. § 3958 may delay enforcement of the storage lien or adjust the amount of the servicemember's obligation to the lienholder. *Id.* at § 3958(b).

3. By failing to obtain court orders before auctioning at least 176 motor vehicles belonging to SCRA-protected servicemembers, the Defendants prevented these servicemembers from obtaining a court's review of whether the lien sales of their vehicles should have been delayed or adjusted to account for their military service.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 50 U.S.C. § 4041.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the actions or omissions giving rise to the United States' allegations occurred in the Western District of Texas. Venue is proper in the El Paso Division because all or a substantial part of the events or omissions giving rise to this cause of action took place in or near El Paso, Texas.

## DEFENDANTS

6. Defendant El Paso is a municipality organized and existing under the laws of the State of Texas. Its agencies and departments are governed by the provisions of the Charter of the City of El Paso 1986 (2022 ed.).

7. El Paso is authorized by law to control and maintain all agencies and departments of the City.

8. El Paso is home to Fort Bliss, the second-largest Army post in the country.

9. Defendant URT is a Delaware corporation with its principal place of business in Mokena, Illinois. URT describes itself as "the leader in towing, recovery, impound, and vehicle management solutions in both the private and public sectors." It "dispatches approximately

500,000 tows, manages over 300,000 impounds and sells over 60,000 vehicles annually across the United States."

10. Defendant RRE is a Texas corporation with its principal place of business in San Antonio, Texas.

## FACTUAL ALLEGATIONS

*The Defendants Hold Liens on the Motor Vehicles They Impound and Auction*

11. In El Paso, impoundment of motor vehicles is the responsibility of the El Paso Police Department ("EPPD"), a municipal law enforcement agency that is organized and operated as an administrative department of the City.

12. EPPD is authorized to remove or impound vehicles in a number of circumstances, including: where a vehicle is left unattended on a public street or highway so as to obstruct traffic; when a vehicle has been involved in an accident and as a result cannot be driven safely because of damage to the vehicle or incapacity of the driver; or when a vehicle has been abandoned. El Paso, Texas Code of Ordinances § 12.08.220(A).

13. EPPD stores all impounded vehicles that come into its custody at the City of El Paso Police Department Municipal Vehicle Storage Facility, located at 11615 Railroad Drive, El Paso, Texas, 79934 ("Railroad Drive Facility"), which is owned by the City.

14. EPPD is authorized to contract with a third party to remove or store impounded motor vehicles. El Paso, Tex. Code of Ordinances § 12.08.220(B).

15. After an impounded motor vehicle is taken into custody at the Railroad Drive Facility, EPPD is required to send a written notice by certified mail to the last known registered owner of the motor vehicle. The notice must inform the owner of the right to claim the motor vehicle within 20 days of the date of the notice, upon payment of towing, preservation and

storage charges. El Paso, Tex. Code of Ordinances § 12.08.220(C); *see* Texas Transportation Code § 683.012.

16. All towing and storage fees assessed against impounded vehicles are liens against the vehicle. El Paso, Tex. Code of Ordinances § 12.08.220(D), (F).

17. If the owner does not reclaim the motor vehicle within the allotted time, state and local law allow the vehicle to be sold by public auction. El Paso, Tex. Code of Ordinances § 12.08.220(C); *see* Tex. Transp. Code §§ 683.012, 683.014.

18. Following the sale of a vehicle, state and local law allow EPPD to deduct from the proceeds of the sale the cost of the auction and towing, preservation, and storage fees. El Paso, Tex. Code of Ordinances § 12.08.220(F); *see* Tex. Transp. Code § 683.015(a).

19. After EPPD is reimbursed for the cost of the auction and other costs, any remaining funds from the sale are held for the registered owner or lien holder for 90 days. After 90 days, unclaimed funds are deposited into an account used to reimburse the EPPD for unpaid auction, towing, preservation, and storage fees of other vehicles. Funds in excess of $1,000 in this account can be transferred to the municipality's general revenue account. El Paso, Tex. Code of Ordinances § 12.08.220(F); *see* Tex. Transp. Code § 683.015(b)-(d).

20. The sales of impounded motor vehicles to recoup towing, preservation, storage and other fees, including auction costs, are lien sales.

21. From December 27, 2011, to at least April 15, 2019, the City contracted with RRE as its agent to conduct vehicle storage and auction operations at the Railroad Drive Facility. RRE's contract provided that it would be paid approximately 37% of the net revenue from storage, impoundment and other fees collected in connection with the operation of the Railroad Drive Facility, and an additional 12% of the net proceeds from the sale of vehicles through

vehicle auctions.  RRE also collected a $95 auction fee from purchasers that was paid directly to RRE.

22. From May 20, 2019, to the present, the City has contracted with URT as its agent to conduct vehicle storage and auction operations at the Railroad Drive Facility.  Under its contract, URT is paid between 38% and 40% of the net revenue from fees collected in connection with the operation of the Railroad Drive Facility, including vehicle storage, impoundment, and notification fees.  URT also receives a percentage of the sale price of all auctioned vehicles.

### *Defendants' Pattern or Practice of Auctioning Servicemembers' Vehicles Without Court Orders*

23. El Paso has no written policies or procedures regarding SCRA compliance in conducting its vehicle auction operations and does not determine whether the owners of any vehicles it auctions, sells, or otherwise disposes of are SCRA-protected servicemembers.

24. During the time period that RRE managed the Railroad Drive Facility, RRE had no written policies or procedures regarding SCRA compliance in conducting its vehicle auction operations and did not determine whether the owners of any vehicles it auctioned, sold, or otherwise disposed of were SCRA-protected servicemembers.

25. Although URT has a written policy stating that it will determine whether an impounded vehicle is owned by "active duty military personnel subject to relief" under the SCRA, during all times relevant to this complaint, URT failed to determine whether the owners of any vehicles it auctioned, sold, or otherwise disposed of were SCRA-protected servicemembers.

26. During all times relevant to this complaint, the Defendants failed to obtain court orders before enforcing their liens on servicemembers' motor vehicles.

**Lieutenant Colonel Lisa Dechent**

27. Lisa Dechent is a Lieutenant Colonel ("LTC") in the United States Army. At all times relevant to this action, LTC Dechent has been an active-duty servicemember, as defined in 10 U.S.C. § 101(d)(1).

28. In May 2005, LTC Dechent graduated from the United States Military Academy at West Point and was commissioned as an officer in the United States Army. She has served on active duty in the United States Army since that time.

29. In June 2016, LTC Dechent purchased a 2016 White Chevrolet Silverado Z71 truck with her then partner Richard Lee Livingston, who at that time was a Chief Warrant Officer 3 ("CW3") in the United States Army. LTC Dechent (whose name at that time was Major Lisa Livingston) and CW3 Richard Livingston were registered co-owners of the vehicle.

30. On January 24, 2019, LTC Dechent deployed from Fort Bliss in El Paso, Texas, to Afghanistan.

31. On or about June 9, 2019, while LTC Dechent was deployed, CW3 Livingston was involved in an accident with the vehicle. Following the accident, EPPD impounded the vehicle and directed a private towing operator to tow the vehicle to the Railroad Drive Facility.

32. On or about September 10, 2019, URT sold LTC Dechent's vehicle at auction for $6,200, without first obtaining a court order.

33. At the time of the sale, LTC Dechent still owed approximately $13,000 on the loan she had used to finance the purchase of the vehicle.

34.     On or about October 7, 2019, while still deployed, LTC Dechent learned for the first time that her vehicle had been auctioned.

35.     On October 10, 2019, the Department of Justice ("Department") received a referral from an Army attorney regarding the sale of LTC Dechent's vehicle.  Based on that referral, the Department opened an investigation to determine whether Defendants were enforcing liens on the property or effects of servicemembers without court orders.

**Other Servicemembers**

36.     Between January 1, 2015, and February 11, 2020, the Defendants enforced liens on at least 176 vehicles that were registered to owners who were protected by the SCRA when their motor vehicles were sold.  The Defendants auctioned all of these vehicles without first obtaining court orders.

(a)     Between January 1, 2015, and April 15, 2019, RRE, acting as an agent and on behalf of El Paso, auctioned 143 vehicles registered to owners protected by the SCRA without court orders;

(b)     Between May 20, 2019 and February 11, 2020, URT, acting as an agent and on behalf of El Paso, auctioned 33 vehicles registered to owners protected by the SCRA without court orders.

**SERVICEMEMBERS CIVIL RELIEF ACT VIOLATIONS**

37.     The SCRA provides that "[a] person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects *without a court order granted before foreclosure or enforcement*."  50 U.S.C. § 3958(a)(1) (emphasis added).  There is

no requirement in Section 3958 that a servicemember inform the lienholder of his or her military service. *Id.*

38. For purposes of 50 U.S.C. § 3958(a)(1), "the term 'lien' includes a lien for storage, repair, or cleaning of the property or effects of a servicemember or a lien on such property or effects for any other reason." 50 U.S.C. § 3958(a)(2).

39. Defendants' actions in selling, auctioning off, or disposing of at least 176 vehicles belonging to servicemembers without court orders are violations of the SCRA that raise an issue of significant public importance under 50 U.S.C. § 4041(a)(2).

40. Defendants' actions in selling, auctioning off, or disposing of at least 176 vehicles belonging to servicemembers without court orders constitute a pattern or practice of SCRA violations under 50 U.S.C. § 4041(a)(1).

41. The servicemembers whose motor vehicles were auctioned, sold, or otherwise disposed of during periods of military service without court orders in violation of the SCRA are "person[s] aggrieved" by the Defendants' conduct pursuant to 50 U.S.C. § 4041(b)(2) and have suffered damages as a result.

**REQUEST FOR RELIEF**

WHEREFORE, the United States requests that the Court enter an ORDER that:

1. Declares that the Defendants' actions, policies, and practices, as alleged herein, violate the SCRA;

2. Declares that the Defendants have engaged in a pattern or practice of violating the SCRA that raises an issue of significant public importance;

3. Enjoins the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them, from:

a. enforcing liens on the motor vehicles and personal property of SCRA-protected servicemembers without court orders, in violation of Section 3958 of the SCRA, 50 U.S.C. § 3958;

b. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the Defendants' illegal conduct to the position they would have been in but for that illegal conduct; and

c. failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any illegal conduct in the future and to eliminate, to the extent practicable, the effects of the Defendants' illegal conduct;

4. Awards appropriate monetary damages to each identifiable victim of the Defendants' violations of the SCRA; and

5. Assesses civil penalties against the Defendants in order to vindicate the public interest, pursuant to 50 U.S.C. § 4041(b)(3).

The United States further requests such additional relief as the interests of justice may require.

Dated:  February 2, 2023

                                          Respectfully submitted,

                                          MERRICK B. GARLAND
                                          Attorney General

| | |
|---|---|
| JAIME ESPARZA | KRISTEN CLARKE |
| United States Attorney | Assistant Attorney General |
| Western District of Texas | Civil Rights Division |

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section
Civil Rights Division

ELIZABETH A. SINGER
Director, U.S. Attorneys' Fair Housing Program
Housing and Civil Enforcement Section

| | |
|---|---|
| */s/* Jacquelyn M. Christilles | /s/ Patricia O'Beirne |
| JACQUELYN M. CHRISTILLES | PATRICIA O'BEIRNE |
| Assistant United States Attorney | Trial Attorney |
| Texas Bar No. 24075431 | United States Department of Justice |
| United States Attorney's Office | Housing and Civil Enforcement Section |
| Western District of Texas | Civil Rights Division |
| 601 N.W. Loop 410, Ste 600 | 950 Pennsylvania Avenue, NW – 4CON |
| San Antonio TX, 78216 | Washington, D.C. 20530 |
| Tel: (210) 384-7365 | Tel: (202) 532-3866 |
| Fax: (210) 384-7312 | Fax: (202) 514-1116 |
| jacquelyn.christilles@usdoj.gov | patricia.o'beirne@usdoj.gov |
| | Attorneys for the United States |